**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAMON IRBY | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| PORTESCAP U.S. INC. d/b/a PORTESCAP, | : | |
| A REGAL REXNORD BRAND; AMERICAN | : | |
| PRECISION INDUSTRIES, INC.; and | : | Civil Action No. _____ |
| REGAL REXNORD CORPORATION | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

Plaintiff Damon Irby, by and through undersigned counsel, files this Complaint against Defendants Portescap U.S. Inc. d/b/a Portescap, a Regal Rexnord Brand; American Precision Industries, Inc.; and Regal Rexnord Corporation, and avers as follows:

**I. INTRODUCTION**

1. This is an employment discrimination, retaliation, and medical-leave interference action arising from Defendants' termination of Plaintiff after Defendants learned that Plaintiff had suffered a serious mental-health and/or neurological medical episode, had been involuntarily hospitalized, was unable to communicate with work during the hospitalization, and sought to return to work immediately upon release.

2. Plaintiff was a qualified employee who worked as an Assembly Technician at Defendants' West Chester, Pennsylvania facility.

3. In April and May 2024, Plaintiff experienced a serious medical condition involving mental-health, neurological, and pain-related issues that substantially limited major life activities, including thinking, concentrating, communicating, brain function, and working.

1

4. Plaintiff was hospitalized, including pursuant to an involuntary 302 commitment, and was unable to personally contact Defendants during the hospitalization.

5. Defendants were notified by Plaintiff's girlfriend on or about May 5, 2024 that Plaintiff was hospitalized, unable to contact Defendants, and expected to be discharged on or about May 16, 2024.

6. Plaintiff contacted Human Resources immediately after his release and asked what paperwork he needed to provide to return to work.

7. Rather than provide Plaintiff with notices required by the Family and Medical Leave Act, request medical certification, engage in the disability-accommodation interactive process, consider retroactive medical leave, short-term disability leave, unpaid leave, or leave as a reasonable accommodation, or allow Plaintiff to return to work, Defendants terminated Plaintiff effective June 21, 2024.

8. Defendants' actions violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.; and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

## II. PARTIES

9. Plaintiff Damon Irby is an adult individual residing in Pennsylvania.

10. Plaintiff was employed by Defendants at their West Chester, Pennsylvania facility.

11. Defendant Portescap U.S. Inc. is a business entity registered to do business in Pennsylvania and, upon information and belief, owned, operated, managed, controlled, and/or employed workers at the Portescap facility located at 110 Westtown Road, West Chester, Pennsylvania 19382.

2

12. Defendant Portescap U.S. Inc. did business as Portescap, a Regal Rexnord Brand, which was the trade name, brand, operating division, and/or apparent employer under which Plaintiff was employed and under which Defendants communicated with Plaintiff regarding his employment.

13. Defendant American Precision Industries, Inc. is a New York business corporation registered to do business in Pennsylvania that employed Plaintiff and/or operated the Portescap facility at which Plaintiff worked.

14. Defendant Regal Rexnord Corporation is, upon information and belief, an entity that acquired Portescap in 2023 and exercised control over policies, employment practices, and human resources functions applicable to Plaintiff.

15. Defendants Portescap U.S. Inc., American Precision Industries, Inc., and Regal Rexnord Corporation acted as Plaintiff's employer, joint employers, integrated employers, successors, alter egos, and/or agents of one another.

16. At all relevant times, Defendants were Plaintiff's employer, joint employers, integrated employers, and/or agents of one another.

17. At all relevant times, Plaintiff had been employed by Defendants for more than twelve months, had worked at least 1,250 hours during the twelve months preceding his need for leave, and worked at a site where Defendants employed at least fifty employees within seventy-five miles.

18. At all relevant times, Defendants employed the requisite number of employees to be covered by the ADA, PHRA, and FMLA.

3

19. At all relevant times, Defendants acted by and through their managers, supervisors, officers, employees, agents, and representatives, including Human Resources Business Partner Laura Estrella-Mentzer.

## III. JURISDICTION AND VENUE

20. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the ADA and FMLA.

21. This Court has supplemental jurisdiction over Plaintiff's PHRA claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

22. Venue is proper in this District under 28 U.S.C. § 1391 because the unlawful employment practices occurred in this District, Plaintiff worked in this District, and Defendants conduct business in this District.

23. Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission. More than one year has passed since Plaintiff initiated the administrative process.

24. Plaintiff received a Notice of Right to Sue from the EEOC on or about May 14, 2026.

25. This Complaint is timely filed within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

## IV. FACTUAL ALLEGATIONS

26. Plaintiff began employment with Defendants on or about October 25, 2021.

27. Plaintiff worked as an Assembly Technician at Defendants' West Chester, Pennsylvania facility.

4

28. Plaintiff was a member of the bargaining unit covered by a collective bargaining agreement between Portescap/American Precision Industries, Inc. and United Electrical, Radio and Machine Workers of America Local 155.

29. At all relevant times, Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation.

30. Plaintiff performed his job satisfactorily and enjoyed his work.

31. Plaintiff has disabilities and/or was regarded by Defendants as disabled within the meaning of the ADA and PHRA.

32. Plaintiff's disabilities included mental health, neurological, and pain-related conditions that substantially limited one or more major life activities.

33. On or about April 20, 2024, Plaintiff experienced a serious medical episode and was hospitalized.

34. Plaintiff was initially taken to Chester County Hospital and was then transferred and held pursuant to a 302 involuntary commitment to address his medical condition.

35. During this hospitalization, Plaintiff was unable to function normally and was unable to communicate with Defendants.

36. Plaintiff was unable to report his absences personally because of his serious medical condition and hospitalization.

37. On or about April 30, 2024, Defendants sent Plaintiff a letter stating that their records indicated he had not reported to work or reported his absence on April 22, 23, and 24, 2024.

38. The April 30, 2024 letter requested that Plaintiff contact Human Resources within five days to discuss the status of his employment.

39. On or about May 5, 2024, directly after receiving the letter, Plaintiff's girlfriend contacted Human Resources on Plaintiff's behalf.

40. Plaintiff's girlfriend informed Human Resources that Plaintiff was hospitalized starting April 20, 2024 and that he was under a 302 involuntary commitment with an anticipated discharge date of May 16, 2024. She made clear that he was unable to contact Human Resources.

41. Plaintiff's girlfriend provided her contact information and offered to speak with Human Resources.

42. Human Resources responded by thanking Plaintiff's girlfriend, stating that it was sorry to hear about Plaintiff, stating that management and HR would assess the situation, and stating that Plaintiff should focus on his health.

43. By no later than May 5, 2024, Defendants had actual knowledge that Plaintiff was absent because of a serious medical condition and hospitalization.

44. Defendants also had actual knowledge that Plaintiff could not personally communicate with Defendants because of his medical condition and hospitalization.

45. Defendants did not send Plaintiff written FMLA eligibility, rights, responsibilities, designation, or medical-certification notices after learning of his hospitalization.

46. Defendants did not inform Plaintiff that he was required to submit medical certification to retroactively approve his absences as FMLA leave, short-term disability leave, or other protected leave.

47. Defendants did not provide Plaintiff with a meaningful opportunity to cure any alleged notice deficiency.

48. Defendants did not provide Plaintiff with any written explanation of what paperwork was needed to protect his employment.

49. Defendants did not request medical documentation from Plaintiff before deciding to terminate him.

50. Defendants did not meaningfully discuss reasonable accommodations with Plaintiff.

51. Defendants did not discuss whether leave, retroactive leave, short-term disability leave, unpaid leave, or excusing the hospitalization-related absences would be a reasonable accommodation.

52. Plaintiff was discharged from the hospital on or about May 15, 2024 and, upon his return, notified Human Resources through email that he was able to return to work as soon as possible. He requested information as to what paperwork he needed to return to work.

53. Human Resources did not respond to Plaintiff until on or about May 23, 2024, stating that Plaintiff's email had gone to spam.

54. Human Resources informed him that, because of Plaintiff's absence and the no-call/no-show clause in the contract, Human Resources needed to touch base with the union and team to ensure it was following contract procedures.

55. Human Resources did not provide Plaintiff with FMLA paperwork on May 23, 2024 or within five days thereafter.

56. Human Resources did not provide Plaintiff with ADA accommodation paperwork on May 23, 2024.

57. Human Resources did not tell Plaintiff what medical documentation would be sufficient for him to return to work.

58. Human Resources did not tell Plaintiff that his absences would remain unexcused unless he applied for FMLA or short-term disability leave.

59. On or about June 11, 2024, Plaintiff had a telephone call with Human Resources in which he again expressed that he wanted to return to work following his release from the hospital. He sought guidance regarding what paperwork and medical documentation Defendants required.

60. Human Resources did not explain the FMLA process nor did they tell Plaintiff that FMLA could be applied retroactively to his hospitalization-related absences.

61. Human Resources did not tell Plaintiff that he would be terminated if he did not submit FMLA paperwork or medical certification.

62. Human Resources did not provide written FMLA eligibility, rights, responsibilities, designation, or certification notices.

63. Plaintiff believed Defendants were working to return him to work. Human Resources stated that returning Plaintiff to work would be difficult because he would be on probation due to attendance points, asserting that Plaintiff already had five points.

64. Plaintiff disputed that he was on probation or that he had five points and Human Resources then determined that Plaintiff was correct. Plaintiff was under the impression that the barrier to his return was removed in this regard.

65. At all relevant times, Plaintiff was willing to provide medical information and see a doctor to the extent necessary to return to work.

66. Plaintiff wanted to return to work and get paid after being released from the hospital.

67. To the extent Human Resources discussed medical leave with Plaintiff, Plaintiff understood that discussion to concern prospective leave going forward, not retroactive protection for his hospitalization-related absences or the paperwork needed to return to work. Plaintiff informed Human Resources that he wanted to return to work and get paid because he believed he

was medically able to resume work, and he sought guidance regarding what documentation Defendants required.

68. On or about June 21, 2024, Defendants terminated Plaintiff's employment for alleged violation of the no-call/no-show policy.

69. Defendants were on notice that Plaintiff's absences were potentially FMLA qualifying and that they related to his disability.

70. Although Defendants could have required Plaintiff to submit medical certification supporting his need for FMLA leave, Defendants did not provide Plaintiff with clear notice that certification was required.

71. The only writing Defendants provided was the termination notice.

72. Had Defendants provided the required FMLA notices and certification opportunity, Plaintiff could have submitted medical documentation supporting his hospitalization, inability to work, and inability to comply personally with ordinary call-in procedures.

73. Despite their clear notice of his medical issues, Defendants relied on the no-call/no-show policy and asserted that returning Plaintiff to work would set a precedent under the union agreement.

74. Defendants terminated Plaintiff despite knowing that the absences were caused by Plaintiff's serious medical condition and hospitalization.

75. Defendants terminated Plaintiff despite knowing that Plaintiff could not personally contact Defendants during the hospitalization.

76. Defendants terminated Plaintiff despite knowing that Plaintiff had promptly contacted Human Resources after release and asked what paperwork he needed to return.

77. Defendants terminated Plaintiff without engaging in a good-faith interactive process.

78. Defendants terminated Plaintiff without providing FMLA notice and certification rights.

79. Defendants terminated Plaintiff without considering retroactive FMLA leave or short-term disability leave.

80. Defendants terminated Plaintiff without considering whether his hospitalization-related absences should be excused as a reasonable accommodation.

81. Defendants' stated reliance on the collective bargaining agreement and no-call/no-show policy was pretextual and/or insufficient to excuse their obligations under federal and state disability and medical-leave laws.

82. The union could not waive Plaintiff's rights under the ADA, PHRA, or FMLA.

83. Defendants' conduct caused Plaintiff to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other damages.

## V.    LEGAL CAUSES OF ACTION

**COUNT ONE**
**ADA DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**

84. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

85. Plaintiff has a qualifying disability and/or was regarded as having a disability within the meaning of the ADA.

86. Plaintiff was qualified to perform the essential functions of his job, with or without reasonable accommodation.

87. Defendants knew of Plaintiff's disabilities and serious medical condition no later than May 5, 2024.

10

88. Plaintiff requested assistance and accommodation by, among other things, notifying Defendants through his girlfriend that he was hospitalized and unable to communicate, contacting Defendants upon release, asking to return to work, and asking what paperwork he needed to provide.

89. Reasonable accommodations included, but were not limited to, retroactive approval of leave, unpaid medical leave, short-term disability leave, FMLA leave, modification or waiver of the no-call/no-show requirement as applied to the hospitalization-related period, and reinstatement to work upon release.

90. Defendants failed to engage in the interactive process in good faith.

91. Defendants failed to request medical documentation before terminating Plaintiff.

92. Defendants failed to identify what paperwork Plaintiff needed to provide.

93. Defendants failed to consider reasonable accommodations.

94. Defendants terminated Plaintiff because of his disability, record of disability, perceived disability, disability-related hospitalization, and/or need for accommodation.

95. Defendants' conduct violated the ADA.

**COUNT TWO**
**PHRA - DISABILITY DISCRIMINATION,**
**FAILURE TO ACCOMMODATE, AND FAILURE**
**TO ENGAGE IN THE INTERACTIVE PROCESS**

96. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

97. Plaintiff is disabled and/or was regarded as disabled within the meaning of the PHRA.

98. Plaintiff was qualified to perform the essential functions of his job, with or without reasonable accommodation.

99. Defendants knew of Plaintiff's disability and need for accommodation.

100. Defendants failed to accommodate Plaintiff.

11

101.    Defendants failed to engage in the interactive process.

102.    Defendants terminated Plaintiff because of his disability, perceived disability, record of impairment, and/or need for accommodation.

103.    Defendants' conduct violated the PHRA.

## COUNT THREE
### ADA/PHRA RETALIATION

104.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

105.    Plaintiff engaged in protected activity under the ADA and PHRA by seeking assistance, accommodation, protected leave, and return to work after disability-related hospitalization.

106.    Defendants subjected Plaintiff to adverse employment action by terminating him.

107.    Defendants terminated Plaintiff because of and in retaliation for his protected activity.

108.    Defendants' conduct violated the ADA and PHRA.

## COUNT FOUR
### FMLA INTERFERENCE

109.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

110.    Plaintiff was an eligible employee within the meaning of the FMLA.

111.    Defendants were covered employers within the meaning of the FMLA.

112.    Plaintiff was entitled to FMLA leave because he had a serious health condition that made him unable to perform the functions of his position.

113.    Plaintiff's hospitalization, continuing treatment, and inability to work constituted a serious health condition under the FMLA.

114. Plaintiff's hospitalization presented an unusual and exigent circumstance in which he was unable to comply with Defendants' ordinary call-in procedures because he had been involuntarily committed for emergency medical treatment and was medically unable to communicate with Defendants.

115. Once Defendants received notice that Plaintiff's absences were caused by his hospitalization and serious health condition, Defendants were required to treat the information provided as sufficient notice of a potentially FMLA-qualifying reason for leave and to provide Plaintiff the notices and opportunity to submit certification required by the FMLA, rather than terminate him for failing to follow ordinary attendance procedures that he was unable to follow.

116. Defendants had sufficient notice of Plaintiff's need for FMLA-qualifying leave no later than May 5, 2024, when Plaintiff's girlfriend informed Human Resources that Plaintiff was hospitalized under a 302 involuntary commitment, unable to contact Defendants, and expected to be discharged on or about May 16, 2024.

117. Plaintiff also provided notice by contacting Human Resources after release, stating that he had been released from the hospital, stating that he was willing and able to return to work, and asking what paperwork he needed to provide.

118. Defendants failed to provide Plaintiff with required FMLA eligibility, rights, responsibilities, designation, and/or certification notices.

119. Defendants failed to advise Plaintiff that his hospitalization-related absences could be protected by FMLA.

120. Defendants failed to provide Plaintiff a meaningful opportunity to submit medical certification.

121. Defendants failed to designate qualifying leave as FMLA leave.

122.    Defendants counted FMLA-qualifying leave against Plaintiff under the no-call/no-show and attendance policies.

123.    Defendants terminated Plaintiff based on absences that should have been protected under the FMLA.

124.    Defendants interfered with, restrained, and denied Plaintiff's FMLA rights.

125.    Defendants' conduct violated the FMLA.

**COUNT FIVE**
**FMLA RETALIATION**

126.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

127.    Plaintiff exercised and/or attempted to exercise rights protected by the FMLA by providing notice, through his girlfriend and then directly, that his absences were caused by hospitalization and a serious health condition, by seeking information regarding what paperwork was required, and by attempting to return to work following his hospitalization.

128.    Defendants knew that Plaintiff's absences were related to a serious health condition and potential FMLA-qualifying leave.

129.    Defendants terminated Plaintiff shortly after receiving notice of his hospitalization, shortly after Plaintiff sought to return to work, and after Human Resources discussed medical leave with Plaintiff.

130.    Defendants' stated reliance on the no-call/no-show policy was pretextual and/or insufficient to justify termination where Defendants had notice that Plaintiff's absences were caused by an involuntary hospitalization and failed to provide required FMLA notices or a meaningful opportunity to submit certification.

131.    Defendants terminated Plaintiff because he exercised and/or attempted to exercise rights protected by the FMLA.

14

132.    Defendants' conduct violated the FMLA.

## VI. DAMAGES

133.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, inconvenience, loss of enjoyment of life, and other compensable injuries.

134.    Defendants acted intentionally, willfully, maliciously, recklessly, and/or with reckless indifference to Plaintiff's federally protected rights.

135.    Plaintiff is entitled to all remedies available under the ADA, PHRA, and FMLA.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Damon Irby respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

a. A declaration that Defendants violated the ADA, PHRA, and FMLA;

b. Back pay, front pay, lost benefits, and other economic damages;

c. Reinstatement or, in the alternative, front pay;

d. Compensatory damages for emotional distress, humiliation, embarrassment, inconvenience, and other non-economic injuries;

e. Liquidated damages under the FMLA;

f. Punitive damages under the ADA, to the extent permitted by law;

g. Pre-judgment and post-judgment interest;

h. Reasonable attorneys' fees and costs;

i. Equitable and injunctive relief, including expungement or correction of Plaintiff's employment records; and

j. Such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

**HENNESSY LAW**
*s/ Kay Hennessy Seven*

_____

KAY HENNESSY SEVEN, ESQUIRE
I.D. NO.: 77262
Hennessy Law, P.C.
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Phone: 267-344-3600
kay@hennessylawfirm.com

Dated: June 18, 2026                    Counsel for Plaintiff Damon Irby

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DAMON IRBY                           :

           Plaintiff,             :

                              :       JURY TRIAL DEMANDED

            v.                   :

PORTESCAP U.S. INC. *d.b.a.*      :

PORTESCAP, A REGAL REXNORD    :       Civil Action No. _____

BRAND ;                           :

AMERICAN  PRECISION INDUSTRIES,  :

INC.; and REGAL REXNORD        :

CORPORATION;                  :

           Defendants.          :

## <u>VERIFICATION</u>

I, Damon Irby, hereby verify that I am the Plaintiff in the above matter and under penalty

of perjury applicable under the laws of the United States that the factual averments in the

attached Complaint are true and correct to the best of my knowledge, information, and belief.

*Damon Irby*
ID Eq4ffreGWpAcnr8WRZikY6gY
_____

Damon Irby

6/4/2026